UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
FRANKFORT

| | | |
|---|---|---|
| STOCKTON MORTGAGE CORPORATION, | ) ) ) | |
| Plaintiff, | ) ) | Case. No. 3:22-cv-00036-GFVT |
| v. | ) ) ) | **MEMORANDUM OPINION** |
| MICHAEL BLAND, *et al.*, | ) ) ) | **&** **ORDER** |
| Defendants. | ) ) ) | |

\*\*\* \*\*\* \*\*\* \*\*\*

This matter is before the Court on Defendant Barrett Financial Group's Motion to Dismiss Plaintiff Stockton Mortgage Corporation's claims for lack of personal jurisdiction pursuant to Rule 12(b)(2) of the Federal Rules of Civil Procedure. [R. 7.] For the reasons that follow, the Motion to Dismiss will be DENIED.

**I**

On February 3, 2021, Stockton Mortgage, a Kentucky corporation, hired Defendant Michael "Craig" Bland, a Georgia resident, to serve as a non-producing branch manager. [R. 1-1 at 6.] As part of his employment with Stockton, Mr. Bland was given "access to extensive confidential information and access to relationships with clients and vendors." *Id.* Under the terms of Mr. Bland's agreement, Mr. Bland "made certain covenants of confidentiality and agreed to several restrictive covenants." *Id.* Mr. Bland signed both a non-disclosure and a no-solicitation agreement with Stockton. *Id.* at 7–8. In relevant part, Mr. Bland agreed to "not disclose Confidential Material to any person or entity, either inside or outside of Company, other than as necessary in carrying out the business of Company, without first obtaining Company's

prior written consent" unless required by court order or subpoena. *Id.* at 6–7. Mr. Bland also agreed that

> commencing as of the date hereof and for a period of one (1) year following cessation of Employee's employment with Company (the "Limited Period") Employee shall not, directly or indirectly, separately or in association with others, interfere, disrupt or damage Company's business by soliciting, recruiting, attempting to recruit, or causing or assisting in the recruitment or attempted recruitment of, any then-current employee of Company, or any individual who has served in any such capacity at any time within the six (6) month period immediately prior thereto, for employment with another person or entity.

*Id.* at 7. In addition, Mr. Bland agreed not to "directly or indirectly, hire, attempt to hire, or cause or assist in the hiring or attempted hiring of, any then-current employee, consultant, or exclusive independent contractor of Company, or any individual who has served in any such capacity at any time within the six (6) month period immediately prior thereto, for employment." *Id.*

On September 7, 2021, Stockton hired Defendant Roy Paeth as a loan officer under terms that are "substantially identical" to the terms of Mr. Bland. *Id.* at 10. Stockton also gave Mr. Paeth "support and access to extensive confidential information, clients, and vendors." *Id.*

On March 24, 2022, Mr. Bland "separated from his employment with Stockton" and moved to Defendant Barrett Financial Group, a competitor of Stockton's located in Arizona. *Id.* On March 29, Stockton sent Mr. Bland a letter reminding him "of his contractual obligations to Stockton." *Id.* Stockton then delivered a cease and desist to Mr. Bland on May 23 and copied Barrett. *Id.* Following Mr. Bland's separation, Stockton "learned that Bland, working in concert with his Co-Defendants, has violated his obligations of confidentiality and non-solicitation." *Id.* Stockton alleges that Mr. Bland and Barrett solicited Stockton employees and "have actively solicited Stockton Mortgage's clients to move their business to Barrett Financial Group." *Id.* Stockton became aware of Mr. Bland's breach of contract and Barrett's alleged solicitation

through an email from Mr. Paeth, while Mr. Paeth was still employed by Stockton, to "a Stockton Mortgage email account formerly used by Bland in his employ with Stockton, and writing to Bland and another Barrett Financial Group employee about the solicitation and employment of Paeth, Paeth's daughter Gillian "GG" Paeth, and Paeth's wife Abby Paeth by Barrett Financial Group." *Id.*

On June 15, 2022, Plaintiff Stockton Mortgage Corporation filed suit against Defendants Michael "Craig" Bland, Roy Paeth, and Barrett Financial Group, LLC, in Franklin County Circuit Court. [R. 1-1.] At that time, Stockton also filed an *ex parte* motion for a Temporary Restraining Order and Preliminary Injunction, as well as a Motion for Expedited Discovery. [R. 7.] Stockton's Complaint contains eight counts: (1) breach of contract claim against Mr. Bland; (2) breach of contact claim against Mr. Paeth; (3) tortious interference with contractual relations against Mr. Bland and Mr. Paeth; (4) tortious interference with business expectancy against all defendants; (5) civil conspiracy against all defendants; (6) breach of the duty of loyalty against Mr. Paeth; (7) violation of Kentucky's Uniform Trade Secrets Act against all defendants; and (8) Restraining Order, Temporary Injunction, and Permanent Injunction against all defendants. [R. 1-1 at 18–23.]

Defendants removed the action to this Court on June 29 on diversity grounds. [R. 1.] Mr. Bland is a citizen of Georgia and Mr. Paeth is a citizen of Tennessee. *Id.* at 2. "Barrett Financial Group is an Arizona limited liability company, with its principal place of business in Gilbert, Arizona." [R. 7 at 1.] A limited liability company "has the citizenship of each of its members." *Delay v. Rosenthal Collins Grp., LLC*, 585 F.3d 1003, 1005 (6th Cir. 2009). Trevor Barrett is Barrett Financial Group's only equity member, and Mr. Barrett is a resident of Arizona. Therefore, Barrett Financial Group is also a citizen of Arizona. *See id.* Stockton is a

3

Kentucky-based company, with its principal place of business in Kentucky. [R. 1-1 at 4.] Therefore, Stockton is a citizen of Kentucky for purposes of diversity jurisdiction.

On June 24, this Court dismissed Stockton's motion for temporary restraining order and construed this matter only as motion for a preliminary injunction. [R. 6 at 2.] Additionally, the Court ordered briefing on the preliminary injunction. *Id.* at 3. On June 30, Defendants filed a Motion to Dismiss pursuant to Rule 12(b)(2) of the Federal Rules of Civil Procedure, arguing that this Court lacks personal jurisdiction over them. [R. 7.] Stockton responded on July 7, and Defendants replied on July 15.[1] [R. 17; R. 18.]

## II

Rule 12 of the Federal Rules of Civil Procedure governs motions to dismiss. Fed. R. Civ. P. 12. Specifically, Rule 12(b)(2) allows parties to file a motion to dismiss for lack of personal jurisdiction. *Id.* "The procedural scheme which guides the district court in disposing of Rule 12(b)(2) motions is well-settled." *Theunissen v. Matthews*, 935 F.2d 1454, 1458 (6th Cir. 1991) (citing *Serras v. First Tenn. Bank Nat'l Ass'n*, 875 F.2d 1212, 1214 (6th Cir. 1989)). The plaintiff bears the burden of showing that the Court has jurisdiction. *Id.*

In determining matters of personal jurisdiction in a diversity case, "a federal court must apply the law of the state in which it sits, subject to constitutional limitations." *Reynolds v. Int'l Amateur Athletic Fed'n*, 23 F.3d 1110, 1115 (6th Cir. 1994). "[T]he defendant must be amenable to suit under the forum state's long-arm statute and the due process requirements of the Constitution must be met." *Estes v. JI-EE Indus. Co., Ltd.*, 2018 WL 990406, at *1 (E.D. Ky. Feb. 20, 2018) (quoting *CompuServe, Inc. v. Patterson*, 89 F.3d 1257, 1262 (6th Cir. 1996) (citation omitted)).

---

[1] On July 1, Barrett filed a Motion to Stay Proceedings pending this Court's ruling on the 12(b)(2) motion to dismiss. [R. 9.] As the Court is now resolving the 12(b)(2) motion, the Motion to Stay will be denied as moot.

4

The Kentucky Supreme Court has clarified how Kentucky's long-arm statute is to be applied. *See Caesars Riverboat Casino, LLC v. Beach*, 336 S.W.3d 51 (Ky. 2011). Under current Kentucky law, to exercise personal jurisdiction over non-resident defendants, courts must follow a two-step analysis which first determines whether "the cause of action arises from conduct or activity of the defendant that fits into one of the [long-arm] statute's enumerated categories." *Id.* at 57. Then, only if a court determines that the defendant's activities fit into one of the nine categories listed in KRS 454.210, should the court proceed to the second step of determining whether the exercise of personal jurisdiction would offend the defendant's federal due process rights. *Id.*; *see, e.g., KFC Corp. v. Wagstaff*, 502 B.R. 484, 495 (W.D. Ky. 2013) (applying the two-step analysis described in *Caesars Riverboat Casino* by first determining if the cause of action "arises from" conduct or activity fitting into one of the nine enumerated activities in KRS 454.210, and secondly considering whether exercising personal jurisdiction was proper under a federal due process analysis).

As for the second step, a determination of whether jurisdiction comports with due process, "personal jurisdiction can either be specific or general." *Air Prods. & Controls, Inc. v. Safetech Intern., Inc.*, 503 F.3d 544, 549–50 (6th Cir. 2007). A court may assert general jurisdiction over out-of-state defendants "when their affiliations with the State are so 'continuous and systematic' as to render them essentially at home in the forum State." *Daimler AG v. Bauman*, 571 U.S. 117, 127 (2014) (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011)). Courts in the Sixth Circuit look to a three part-test to determine specific jurisdiction:

> First, the defendant must purposefully avail himself of the privilege of acting in the forum state or causing a consequence in the forum state. Second, the cause of action must arise from the defendant's activities there. Finally, the acts of the defendant or consequences caused by the defendant must have a substantial

5

> enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable.

*Air Prods. & Controls, Inc.*, 503 F.3d at 550 (quoting *S. Mach. Co. v. Mohasco Indus., Inc.*, 401 F.2d 374, 381 (6th Cir. 1968)).

Ordinarily, the plaintiff bears the burden of establishing by a preponderance of the evidence whether personal jurisdiction exists over a non-resident defendant. *Conn v. Zakharov*, 667 F.3d 705, 711 (6th Cir. 2012). Where, as here, Barrett has moved to dismiss the case for lack of personal jurisdiction under Rule 12(b)(2), and the court resolves the issue based on written submissions rather than after an evidentiary hearing or discovery, "the plaintiff need only make a 'prima facie' case that the court has personal jurisdiction." *Id.* The Court must consider the pleadings and submitted affidavits "in the light most favorable to the plaintiff," though the Court may also "consider the defendant's undisputed factual assertions." *Id.*; *see also Am. Greetings Corp. v. Cohn*, 839 F.2d 1164, 1168–69 (6th Cir. 1988) (finding that if a district court chooses to decide the issue based solely on the parties' written materials, the plaintiff is only required "to make a prima facie case of jurisdiction," meaning that the plaintiff only needs to "demonstrate facts which support a finding of jurisdiction in order to avoid a motion to dismiss.") (quoting *Welsh v. Gibbs*, 631 F.2d 436, 438–39 (6th Cir. 1980)).

### A

The Court first addresses whether "the cause of action arises from conduct or activity of the defendant that fits into one of the [long-arm] statute's enumerated categories." *Caesars Riverboat Casino*, 336 S.W. 3d at 57. Under Kentucky's long-arm statute, a court may exercise personal jurisdiction over any person who either acts directly or by an agent as to any claim that arises from the person's:

1. Transacting any business in this Commonwealth;

6

> 2. Contracting to supply services or goods in this Commonwealth;
> 3. Causing tortious injury by an act or omission in this Commonwealth;
> 4. Causing tortious injury in this Commonwealth by an act or omission outside this Commonwealth if he regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered in this Commonwealth, provided that the tortious injury occurring in this Commonwealth arises out of the doing or soliciting of business or a persistent course of conduct or derivation of substantial revenue within the Commonwealth….

KRS § 454.210.

In the motion, Barrett argues that Stockton "alleges that Barrett Financial Group 'was doing business in Kentucky,'" but fails to adequately support that claim. [R. 7 at 8.] Barrett posits that "while heavy on rhetoric and critical of Barrett Financial Group, Plaintiff's allegations are particularly light on facts or engagements relating to contacts by any of the defendants within the state of Kentucky. Plaintiff offers no specifics as to how, when, or where any of these alleged facts occurred." *Id.* Barrett specifically argues that any activity they have conducted in Kentucky was not considered "transacting business" or was not sufficient minimum contact required to satisfy Kentucky's long-arm statute. *Id.* at 8–11. Defendants cite to KRS § 14A.0-101(2), arguing that "certain activities '[do] not constitute transacting business in the state of Kentucky'" under that statute. *Id.* at 8–9.

In response, Stockton argues that Barrett has engaged in the following activities:

> Registering to do business in Kentucky; employing people who are licensed to make loans in Kentucky and are making loans to Kentucky residents; advertising that it employs 20 licensed loan officers for Kentucky; directly soliciting Stockton employees, who are Kentucky residents…acquiring a registered agent in Kentucky.

[R. 17 at 2–3.] Furthermore, Stockton, a Kentucky corporation, alleges that Barrett solicited Mr. Paeth and Mr. Bland to quit Stockton in violation of their employment agreements, which has caused irreparable harm to Stockton. [R. 1-1 at 5–8.]

7

Barrett argues that certain of their activities, such as registering to do business in Kentucky and acquiring a registered agent in Kentucky for service of process, are not sufficient to confer personal jurisdiction. Standing alone, this is likely true. The Sixth Circuit has not specifically addressed whether registering to do business in Kentucky is sufficient, on its own, to confer personal jurisdiction. However, later this year the Supreme Court will hear oral argument in *Mallory v. Norfolk S. Ry. Co.*, --- S. Ct. ---, No. 21-1168, 2022 WL 1205835, at *1 (Apr. 25, 2022) (granting certiorari). *Mallory* will likely shed light on the issue of whether registering to do business in a state can be sufficient to confer personal jurisdiction over that business. Courts within the Sixth Circuit have generally found that acquiring a registered agent is insufficient, standing alone, to confer personal jurisdiction. *See, e.g.*, *Lubbers v. John R. Jurgensen Co.*, 2021 WL 4066663, at *5 (E.D. Ky. Sept. 7, 2021); *Stehle v. Ventura Logistics, LLC*, 2020 WL 127707, at *5 (S.D. Ohio Jan. 10, 2020); *Western Express, Inc. v. Villanueva*, 2017 WL 4785831, at *7 (M.D. Tenn. Oct. 24, 2017); *Magna Powertrain De Mexico S.A. De C.V. v. Momentive Performance Materials USA LLC*, 192 F. Supp. 3d 824, 830 (E.D. Mich. 2016).

However, the Court finds that the list of activities *supra*, taken together and viewed in a light most favorable to Stockton, are sufficient to find that Barrett was transacting business in Kentucky under the long-arm statute. The fact that Barrett (1) registered to do business in Kentucky and acquired a registered agent in Kentucky, (2) advertised that it employed twenty licensed loan officers for Kentucky, (3) employed people who make loans in Kentucky, (4) made loans to Kentucky residents, and (5) allegedly solicited Stockton employees and clients shows that Barrett was transacting business in Kentucky when the Complaint was filed.[2] [R. 1-1 at 11–

---

[2] "Minimum contacts must exist either at the time the cause of action arose, the time the suit is filed, or within a reasonable period of time immediately prior to the filing of the lawsuit." *Estes v. JI-EE Indus. Co., Ltd.*, 2019 WL 320565, at *4 (E.D. Ky. Jan. 24, 2019) (quoting *Pecoraro v. Sky Ranch for Boys, Inc.*, 340 F.3d 558, 562 (8th Cir. 2003)).

17.]  Furthermore, and as discussed in greater detail in section II.B. *infra*, the causes of action in this case arise from Barrett's activities in Kentucky.

There is factual support for Stockton's claims in the record, such as a series of emails between Mr. Paeth and Mr. Bland, and Mr. Paeth and a Barrett employee, while Mr. Paeth was still employed with Stockton regarding his "coming on board" at Barrett. [R. 1-1 at 60–62.] Barrett does not contest that it employs people who are licensed to make loans in Kentucky and advertising that they employ twenty licensed loan officers for Kentucky. [R. 18 at 12.] "Under the 'transacting any business' prong of the Kentucky long arm statute, the 'use of the word 'any' ... establishes that even the slightest transaction is sufficient to bring a corporation within [the forum's] long-arm jurisdiction.'" *Eat More Wings, LLC v. Home Market Foods, Inc.*, 282 F. Supp. 3d (E.D. Ky. 2017) (quoting *Beydoun v. Wataniya Rests. Holding, Q.S.C.*, 768 F.3d 499, 504–05 (6th Cir. 2014)).  Therefore, the Court finds that Barrett's actions constitute transacting business within Kentucky and satisfy Kentucky's long-arm statute.

Finally, Barrett incorrectly applies the definition of "transacting business" from one statute to another.  To define the term "transacting business," Defendants cite to KRS § 14A.9-010(2). [R. 7 at 9.]  Although KRS § 545.210 and KRS § 14A.9-010 both use the term "transacting business," the two definitions are not interchangeable or cross-applicable.  "Transacting business" within KRS § 14A.9-010 pertains only to the specific context of what activities a business can engage in without obtaining a certificate of authority from the Secretary of State.  Subsection two of KRS § 14A.9-010, which lists activities that "shall not constitute transacting business," applies only to subsection one of the statute and not to Kentucky's long-arm statute.  And Barrett has not demonstrated otherwise.  Therefore, KRS § 14A.9-010 should not be used in the same context of "transacting business" as the term is used to define personal

9

jurisdiction under KRS § 545.210. Accordingly, the Court finds Defendants' arguments related to KRS § 14A.9-010(2), specifying what activities "do not constitute transacting business," are irrelevant. [R. 7 at 8–9.]

B

Next, Barrett argues that due process considerations compel dismissal of this case. [R. 14.] Barrett specifically argues that it does not have such systematic and continuous contact because its "contacts are not with the state of Kentucky, but with individuals who live in Georgia and Tennessee." *Id.* at 14. In addition, Barrett argues that "none of the activity alleged by Plaintiff even comes close to approaching 'continuous and systematic.'" *Id.*

The Court is not persuaded by Barrett's arguments. First, the Court finds that Barrett purposefully availed itself of the privilege of acting in Kentucky or causing a consequence in Kentucky. *Air Prods. & Controls, Inc.*, 503 F.3d at 550 (quoting *S. Mach. Co.*, 401 F.2d at 381). Purposeful availment is the "*sine qua non* for in personam jurisdiction." *Mesa Indus., Inc. v. Charter Indus. Supply, Inc.*, 2022 WL 3082031, at *7 (S.D. Ohio Aug. 3, 2022) (quoting *S. Mach. Co.*, 401 F.2d at 381–82). The purposeful availment requirement "ensures that a defendant will not be haled into a jurisdiction solely as a result of 'random,' 'fortuitous,' or 'attenuated' contacts, or of the 'unilateral activity of another party or a third person.'" *Air Prods. & Controls, Inc.*, 503 F.3d at 551 (quoting *Burger King Corp.*, 471 U.S. at 476). "[P]hysical presence in a forum state is not required, and the Supreme Court has 'consistently rejected the notion that an absence of physical contacts can defeat personal jurisdiction there.'" *Id.*

Barrett is not physically present in Kentucky. However, "[t]he reality that modern business often occurs electronically and by phone will not defeat personal jurisdiction, the Supreme Court has said, if the defendant's 'efforts are purposefully directed toward residents of

another State.'" *Power Investments, LLC v. SL EC, LLC*, 927 F.3d 914, 919 (6th Cir. 2019) (quoting *Burger King*, 471 U.S. at 476). As discussed *supra*, and taking the allegations in the light most favorable to Stockton, Barrett is registered to do business in Kentucky, acquired a registered agent in Kentucky, has advertised that it has twenty active officers who make loans in Kentucky, has made loans to Kentucky residents, has solicited Stockton employees who are Kentucky residents, and has solicited clients from Stockton, a Kentucky corporation, to Barrett. [R. 1-1 at 10; R. 17 at 2–3, 6.] It is true that "a bare allegation that a defendant caused an effect in the forum state, standing alone, does not suffice to confer specific personal jurisdiction." *Mesa Indus., Inc.*, 2022 WL 3082031, at *9. However, more than "a bare allegation" is present here. *Id.* In this case, the Court finds that "the defendant's conduct connects him to the forum in a meaningful way." *Id.* (quoting *Walden v. Fiore*, 571 U.S. 277, 290 (2014)).

Next, the Court finds that the causes of action arise from Barrett's activities in Kentucky.[3] *Air Prods. & Controls, Inc.*, 503 F.3d at 550 (quoting *S. Mach. Co.*, 401 F.2d at 381). The Sixth Circuit has articulated "the standard for this prong in a number of different ways, such as whether the causes of action were 'made possible by' or 'lie in the wake of' the defendant's contacts, or whether the causes of action are 'related to' or 'connected with' the defendant's contacts with the forum state." *Id.* at 553 (internal citation omitted). The "arises from" standard is "a 'lenient standard' and…the cause of action need not 'formally' arise from defendant's contacts." *Id.* (citing *Bird v. Parsons,* 289 F.3d 865, 875 (6th Cir. 2002)).

---

[3] Kentucky's long-arm statute does not reach the outer limits of the Due Process Clause. *Williams v. Sig Sauer, Inc.*, 2022 WL 713438, at *2 (E.D. Ky. Mar. 9, 2022) ("The Kentucky Supreme Court has held that the state's long-arm statute (Ky. Rev. Stat. Ann. § 454.210) does not reach the outer limits of the Due Process Clause.") (quoting *Hall v. Rag-O-Rama, LLC*, 359 F. Supp. 3d 499, 505 (E.D. Ky. Jan. 8, 2019)). To the extent that both Kentucky's long-arm statute and Due Process Clause require the causes of action to "arise from" Barrett's activities in Kentucky, the Court finds the allegations discussed *infra* satisfy both the statute and the Due Process Clause.

Stockton alleges that it has been damaged, and in fact has suffered irreparable harm, because of Defendant Barrett Financial's actions causing Mr. Paeth and Mr. Bland to breach their contracts with Stockton. Underlying all of Stockton's claims is the idea that Defendants' actions, which include attempting to hire current Stockton employees and soliciting Stockton's clients, were taken to expand Barrett's business in Kentucky. Stockton's claims, therefore, are "connected to" the Defendants' contacts with Kentucky. *Id.* at 553. At this stage, a plaintiff must only "demonstrate facts which support a finding of jurisdiction." *Cohn*, 839 F.2d at 1168–69. Because Court finds that Stockton's actions constitute transacting any business in the Commonwealth, Stockton has provided enough specificity to survive dismissal.

Finally, the Court finds that Barrett's acts, or consequences caused by Barrett, have a substantial enough connection with Kentucky to make the exercise of jurisdiction over them reasonable. *Id.* at 550 (quoting *S. Mach. Co..*, 401 F.2d at 381). The Sixth Circuit has established a presumption that "where the first two prongs of the *Southern Machine* inquiry are met, 'an inference arises that the third, fairness, is also present; only the unusual case will not meet this third criterion.'" *Mesa Indus., Inc.*, 2022 WL 3082031, at *13 (quoting *First Nat. Bank of Louisville v. J.W. Brewer Tire Co.*, 680 F.2d 1123, 1126 (6th Cir. 1982)).

> The Supreme Court has articulated several factors a court should consider in determining "reasonableness": (1) the burden on the defendant, (2) the forum state's interest in adjudicating the dispute, (3) the plaintiff's interest in obtaining convenient and effective relief, (4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and (5) the shared interest of the States in furthering fundamental substantive social policies. *Burger King*, 471 U.S. at 477, 105 S.Ct. 2174 (citing *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 292, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980)).

*Id.*

Barrett argues that it would be burdened by having to defend a lawsuit in Kentucky, "particularly since it has no presence there." [R. 7 at 17.] Furthermore, Barrett argues that it

12

would be unreasonable to be haled into court "as a result of hiring a former employee of a Kentucky corporation because that employee had entered into an employment contract that contained a choice of jurisdiction provision." *Id.* However, Barrett's contentions are mitigated "by the realities of modern litigation. Parties now routinely conduct depositions via videoconferencing technology, and courts likewise utilize such technology for oral arguments, evidentiary hearings, and even mediation discussions." *Mesa Indus., Inc.*, 2022 WL 3082031, at *14. Accordingly, the Court finds this factor does not weigh in favor of Barrett.

Second, Kentucky certainly has an interest in adjudicating the dispute. Stockton is a Kentucky corporation, employs citizens of Kentucky, and the suit alleges violations of Kentucky's Uniform Trade Secrets Act and breach of contracts governed by Kentucky law. [R. 1-1 at 5, 11–17.] Third, Stockton has an interest in obtaining convenient and effective relief, and while Stockton could likely reach all of the Defendants in another forum, it would be inconvenient for Stockton to be forced to litigate this matter in another state. *Mesa Indus., Inc.*, 2022 WL 3082031, at *14.

The fourth and fifth factors also favor Kentucky jurisdiction. The Court finds that the interstate judicial system's interest in obtaining the most efficient resolution of controversies is satisfied by holding this case in Kentucky. Although Barrett argues that "Arizona has a greater interest" in this case, Barrett has offered no argument to support this statement other than its own residence. [R. 7 at 20.] However, the Plaintiff is located in Kentucky, the laws of Kentucky are implicated, and Stockton alleges that Kentucky citizens have been impacted. These facts and allegations indicate that the most efficient resolution of this matter is to hold this case in Kentucky. Furthermore, the shared interest of the States in furthering fundamental substantive social policies is also satisfied by holding this case in Kentucky because of the Kentucky citizens

13

and laws that are involved. Ultimately, the Court finds that it has specific jurisdiction over Barrett and will deny Barrett's motion to dismiss.[4]

### III

Accordingly, and the Court being sufficiently advised, it is hereby **ORDERED** as follows:

1. Defendants' Motion to Dismiss **[R. 7]** is **DENIED**; and

2. Motion to Stay Ruling Pending the Court's Ruling on Defendants' Motion to Dismiss **[R. 9]** is **DENIED AS MOOT**.

This the 16th day of August, 2022.

Gregory F. Van Tatenhove
United States District Judge

---

[4] Because the Court found specific jurisdiction, it need not determine whether general jurisdiction is also present. *Air Prods. and Controls, Inc.*, 503 F.3d at 550 ("Because we ultimately conclude that the district court had specific jurisdiction over Defendants, we focus only on that question and do not reach the question of general jurisdiction.")