UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
FRANKFORT

| | | |
|---|---|---|
| STOCKTON MORTGAGE CORP., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case. No. 3:22-cv-00036-GFVT |
| v. | ) | |
| | ) | **MEMORANDUM OPINION** |
| MICHAEL BLAND, *et al.*, | ) | **&** |
| | ) | **ORDER** |
| Defendants. | ) | |
| | ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

This matter is before the Court on Plaintiff Stockton Mortgage Corporation's motions for preliminary injunction and expedited discovery. [R. 1-1 at 66-76, 82-84.] Michael Bland and Roy Paeth worked at Stockton Mortgage. After they left to work at Barrett Financial Group, Stockton sued Mr. Bland, Mr. Paeth, and Barrett, alleging contract and tort claims. Stockton now requests that the Court allow an expedited discovery period and enjoin the Defendants from using confidential materials and soliciting employees or borrowers during the pendency of the case. For the following reasons, the Plaintiff's motions are **DENIED**.

**I**

Plaintiff Stockton Mortgage Corporation is a business that originates, sells, and services mortgage loans. [R. 1-1 at 5.] In 2021, Stockton hired Defendant Michael Bland as a branch manager and Defendant Roy Paeth as a loan officer. *Id.* at 6, 10. Mr. Bland and Mr. Paeth later left Stockton to work for Defendant Barrett Financial Group, a competing mortgage broker. *Id.* at 6.

As part of their employment at Stockton, Mr. Bland and Mr. Paeth signed contracts that included restrictions on their actions during and after their employment. *Id.* at 6, 10. The contracts contained restrictions that prohibited Mr. Bland and Mr. Paeth from disclosing Stockton's confidential information, soliciting or recruiting Stockton employees for other employment, and soliciting recent Stockton customers for other mortgage lenders. *Id.* at 6-8.

In March 2022, Stockton ended Mr. Bland's employment with the company. *Id.* at 67. Stockton locked Mr. Bland out of the work-related programs on the company's computer, but Mr. Bland emailed to himself "tax information, photos, personal insurance, house documents, past clients (more than one year ago), and some loan tools." [R. 10-1 at 3.] Stockton alleges that Mr. Bland took confidential client information. [R. 1-1 at 68.] Mr. Bland later joined Barrett as a loan officer.

Mr. Paeth sought new employment around April 2022. [R. 10-2 at 4.] During his search, Mr. Paeth called Mr. Bland to ask whether Mr. Bland liked working at Barrett and to understand Barrett's loan origination process. *Id.* Mr. Paeth also emailed Mr. Bland during his job search. In one email, Mr. Paeth asked benefits questions and said that he expects to leave Stockton around the end of May but that "[n]ew files I can definitely see being able to run through you." [R. 16-2 at 2.] In another email, Mr. Paeth forwarded to Mr. Bland an email that he sent to a Barrett representative and said that he was "[n]ot sure if you have talked to Brayden or Kristen about how we would structure things." [R. 1-1 at 60-62.] Mr. Paeth later left Stockton to work at Barrett, but before he left, Mr. Paeth "copied [his] list of prior realtor contacts and [his] customer list which were stored on Stockton's computers." [R. 10-2 at 3.] Mr. Paeth's daughter later also joined Barrett. *Id.* at 5.

Stockton later filed suit against Mr. Bland, Mr. Paeth, and Barrett, contending that they took confidential information and solicited Stockton employees and customers in violation of the employment contracts. [R. 1-1.] From this conduct, Stockton alleges seven claims: (1) breach of contract against Mr. Bland, (2) breach of contract against Mr. Paeth, (3) tortious interference with contractual relations against all Defendants, (4) tortious interference with business expectancy against Mr. Bland and Mr. Paeth, (5) civil conspiracy against all Defendants, (6) breach of the duty of loyalty against Mr. Paeth, and (7) violation of the Kentucky Uniform Trade Secrets Act against all Defendants. *Id.* With the complaint, Stockton also moved for a preliminary injunction to prevent the Defendants from causing Stockton harm while the matter proceeds and for expedited discovery to gather more information for its preliminary injunction motion. [R. 1-1 at 66, 82.] The Court will address Stockton's motion for preliminary injunction then turn to the motion for expedited discovery.

**II**

"A preliminary injunction is an extraordinary remedy which should be granted only if the movant carries his or her burden of proving that the circumstances clearly demand it." *Overstreet v. Lexington–Fayette Urban County Government*, 305 F.3d 566, 573 (6th Cir. 2002) (citing *Leary v. Daeschner*, 228 F.3d 729, 739 (6th Cir. 2000) (noting that a preliminary injunction involves exercising "a very far-reaching power")). The purpose of a preliminary injunction is to "preserve the relative positions of the parties until a trial on the merits can be held." *Robertson v. United States Bank, N.A.*, 831 F.3d 757, 761 (6th Cir. 2016) (internal quotations omitted).

To issue a preliminary injunction, the Court considers four factors: (1) whether the movant has shown a strong likelihood of success on the merits, (2) whether the movant will

suffer irreparable harm if the injunction is not issued, (3) whether the issuance of the injunction would cause substantial harm to others, and (4) whether the public interest would be served by issuing the injunction. *See Overstreet,* 305 F.3d at 573. These considerations are generally "factors to be balanced, not prerequisites that must be met." *Six Clinics Holding Corp., II v. Cafcomp Sys.*, 119 F.3d 393, 400 (6th Cir. 1997). However, a party moving for a preliminary injunction must establish a strong likelihood of success on the merits. *See Overstreet*, 305 F.3d at 573.

Likewise, a party moving for a preliminary injunction must demonstrate that the harm suffered absent relief would be irreparable. *See D.T. v. Sumner Cty. Sch.*, 942 F.3d 324, 327 (6th Cir. 2019). To constitute an irreparable harm absent relief, the harm must be actual and immediate, not "speculative or theoretical." *Id.* (citing *Mich. Coal. of Radioactive Material Users, Inc. v. Griepentrog*, 945 F.2d 150, 154 (6th Cir. 1991)). The harm must also be such that there is no adequate remedy at law. *See United States v. Miami Univ.*, 294 F.3d 797, 816 (6th Cir. 2002). Because later compensatory damages are an adequate legal remedy, a plaintiff's harm that is fully compensable by money damages generally does not constitute irreparable injury. *See Nat'l Viatical, Inc. v. Universal Settlements Int'l, Inc.*, 716 F.3d 952, 957 (6th Cir. 2013). A plaintiff's harm is not fully compensable by money damages when the nature of the harm would make damages difficult to calculate. *See Basicomputer Corp. v. Scott*, 973 F.2d 507, 511 (6th Cir. 1992).

When a party seeks a preliminary injunction on multiple claims, courts evaluate each claim separately. *See RECO Equip., Inc. v. Wilson*, No. 20-4312, 2021 U.S. App. LEXIS 32413, at *4-5 (6th Cir. Oct. 28, 2021). Stockton argues that an injunction would be proper under any of its seven claims: breach of contract against Mr. Bland, breach of contract against Mr. Paeth,

4

misappropriation of trade secrets, tortious interference with contractual relations, tortious interference with business expectancy, civil conspiracy, and breach of the duty of loyalty. Thus, the Court will separately determine whether each claim merits a preliminary injunction. *See id.* For each claim, Stockton fails to show a strong likelihood of success or that the claim will cause irreparable harm. Accordingly, a preliminary injunction is improper.

A

Mr. Bland and Mr. Paeth's employment contracts include the same relevant clauses, and the Defendants do not dispute the enforceability of the contract provisions. [R. 1-1 at 27-30, 45-47; R. 10 at 3-4; R. 28 at 5.] To succeed on a breach of contract claim, a plaintiff must prove the existence of a valid contract, that the Defendant breached the contract, and that damages resulted from the breach. *See Metro Louisville/Jefferson Co. Gov't. v. Abma*, 326 S.W.3d 1, 8 (Ky. Ct. App. 2009). Stockton argues that Mr. Bland and Mr. Paeth breached three provisions of their employment contracts: (1) the non-disclosure covenant, (2) the employee non-solicitation covenant, and (3) the borrower re-solicitation prohibition. [R. 1-1 at 6-8.]

First, Stockton alleges that Mr. Bland and Mr. Paeth violated the non-disclosure provision. Non-disclosure agreements are generally valid to prohibit employees from disclosing or using employer confidential business information without the employer's permission. *See, e.g., Papa John's Int'l, Inc. v. Pizza Magia Int'l, LLC*, No. 3:00CV-548-H, 2001 U.S. Dist. LEXIS 11966, at *12 (W.D. Ky. May 10, 2001) ("[T]hese agreements cannot prevent anyone from using some general information about the pizza industry, but on the other hand, likely prevent the disclosure of closely guarded proprietary information."). Here, the non-disclosure provisions prohibit Mr. Bland and Mr. Paeth from "disclosing Confidential material" during and after their employment "as a consequence of Employee's acquisition or anticipated acquisition of

Confidential Material." [R. 1-1 at 28, 45-46.] Confidential material is then defined as information available to or used by the employee and (1) is created by or proprietary to the employer, (2) gives the employer a competitive business advantage or the disclosure would be detrimental to the employer, or (3) is designated as confidential. *Id.* The agreements state that all confidential material "is in the nature of a trade secret or other legitimate, protectable business interest and may be subject to the federal Defend Trade Secrets Act." *Id.* The agreements further provide that confidential information includes "[c]onfidential and proprietary" information about clients and client "non-public personal information" as defined by the Gramm-Leach-Bliley Act. *Id.*

Second, Stockton alleges that Mr. Bland and Mr. Paeth solicited employees in violation of the contracts. Certainly, reasonable restrictions on the solicitation of employees are also enforceable. *See, e.g.*, *First Fin. Bank v. Williams*, No. 5:19-CV-128-TBR, 2019 U.S. Dist. LEXIS 171057 (W.D. Ky. Oct. 2, 2019). Here, Stockton's employment contracts prohibit recent employees from "soliciting, recruiting, attempting to recruit, or causing or assisting in the recruitment of" Stockton employees to protect Stockton's confidential materials and the "significant investment in developing its business." [R. 1-1 at 29, 46.] When a term is not defined in the contract, courts applying Kentucky law use the ordinary definition of the term. Courts interpreting the term "solicit" in contracts require more interaction than "mere informational contact." *See, e.g.*, *Wells v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 919 F. Supp. 1047, 1053 (E.D. Ky. 1994).

Third, Stockton argues that Mr. Bland and Mr. Paeth solicited clients in violation of the contracts. A customer non-solicitation agreement is enforceable if the terms are reasonable. *See, e.g.*, *ISCO Indus. v. Shugart*, No. 3:14-CV-00249-TBR, 2014 U.S. Dist. LEXIS 72245, at *12-13

6

(W.D. Ky. May 27, 2014). Customer solicitation prohibitions protect businesses from employees resigning and taking customers with them. *See Managed Health Care Assocs. v. Kethan*, 209 F.3d 923, 929 (6th Cir. 2000). Here, Stockton's employment contracts state that former employees may not solicit "any consumer for whom a loan previously was processed and closed by Company" for 12 months after Stockton closed the loan with the customer or for a period specified elsewhere "if such solicitation" would result in a loss to Stockton. [R. 1-1 at 29-30, 46.]

In addition to arguing that the Defendants breached the above contract provisions, Stockton argues that the Court should enjoin the Defendants from violating the contracts because the breaches cause irreparable harm. Indeed, a contract breach that threatens to harm customer relationships or that will cause a loss of fair competition often constitute irreparable injury. *See York Risk Servs. Group. v. Couture*, 787 F. App'x 301, 308 (6th Cir. 2019); *Basicomputer Corp.*, 973 F.2d at 512. Breaching a contract by failing to return confidential information also causes irreparable injury. *See, e.g.*, *Koorsen Fire & Sec., Inc. v. Westerfield*, No. 1:17-cv-845, 2018 U.S. Dist. LEXIS 203766, at *26 (S.D. Ohio May 21, 2018).

However, Stockton fails to establish that Mr. Bland violated any of these provisions. Stockton also fails to establish that Mr. Paeth threatens to cause irreparable harm by violating a contract provision.

*i*

Stockton contends that Mr. Bland violated the non-disclosure, non-solicitation, and re-solicitation provisions of his employment contract, and these violations will cause irreparable harm if not enjoined.

7

Stockton alleges that Mr. Bland breached the non-disclosure provision by "email[ing] himself client information." [R. 1-1 at 11; R. 16 at 2.] In support, Stockton cites only Mr. Bland's affidavit filed as part of his response. The affidavit states that Mr. Bland emailed to himself "tax information, photos, personal insurance, house documents, past clients (more than a year ago), and some loan tools that were not proprietary to Stockton." [R. 10-1 at 3.]

Stockton fails to establish a likelihood of success because it fails to show that any information Mr. Bland emailed to himself falls under the contact's definition of confidential by (1) being created by or proprietary to Stockton, (2) giving Stockton a competitive business advantage or constituting a detrimental disclosure, or (3) being designated as confidential. [R. 1-1 at 28, 45-46.] Rather than material "in the nature of a trade secret" or other business interest, including client non-public information, Mr. Bland argues that any information taken "is easily obtainable from state realtor licensing boards as public information" and that he "did not download any Stockton employee, referral or customer list." [R. 10 at 3; R. 10-1 at 5.] Indeed, Stockton offers no description of the "client information." Stockton therefore has failed to show that Mr. Bland breached his non-disclosure agreement.

Stockton also alleges that Mr. Bland breached the employee non-solicitation and borrower re-solicitation provisions because he was "involved in moving Paeth [and others] to Barrett" for employment and the Defendants "accepted business at Barrett that would have otherwise gone to Stockton." [R. 16 at 2, 6.] Stockton argues that an email sent to Mr. Bland establishes that he solicited Mr. Paeth to work for Barrett. The email attached a previous email from an assistant at Barrett requesting information from Mr. Paeth and showed Mr. Paeth telling Mr. Bland that he was "not sure if you have talked" to Barrett employees about "how we would structure things." [R. 1-1 at 60.] This, alone, fails to establish that Mr. Bland breached his

8

employment contract by soliciting or recruiting Stockton employees because it fails to show Mr. Bland entertained discussions regarding Mr. Paeth's employment at Barrett. Any contact appears merely informational and does not reflect the interaction needed to constitute solicitation. *See Wells*, 919 F. Supp. at 1053 (finding that offering to talk to a potential client about problems or questions they might have, without asking the potential client to transfer their business, was not solicitation).

Similarly, Stockton alleges that Mr. Bland admitted to breaching his re-solicitation prohibition because he stated that he did not accept business from a client pre-approved by Stockton. [R. 10-1 at 4.] Stockton argues that this statement implies that Mr. Bland accepted other business from Stockton borrowers. The Court fails to find any admission by implication. And Stockton provides no specific evidence showing that Mr. Bland solicited a client who had a loan processed by Stockton within the prior year. [R. 1-1 at 29-30, 46.]

By failing to establish that Mr. Bland likely breached a provision of his employment contract, Stockton has not established a likelihood of success on its contract claim against Mr. Bland.

ii

Stockton argues that Mr. Paeth also violated the non-disclosure, employee non-solicitation, and borrower re-solicitation provisions of his employment contract and that irreparable injury will result absent an injunction. Because Stockton fails to establish that Mr. Paeth breached the non-disclosure provision and that irreparable injury would result from a breach of the employee non-solicitation or borrower re-solicitation provisions, a preliminary injunction is inappropriate for Stockton's breach of contract claim against Mr. Paeth.

First, Stockton alleges that Mr. Paeth violated his non-disclosure agreement because he "downloaded and took with him a list of all prior realtor contacts and his customer list stored on Stockton's computers." [R. 16 at 2.] In support, Stockton contends that Mr. Paeth admitted to this in his affidavit. *Id.* But, like Mr. Bland, Mr. Paeth stated only that he downloaded the realtor contact and customer list brought with him to Stockton. [R. 10-2 at 4.] Mr. Paeth further stated that Stockton did not provide him with any new contacts, he did not add to his list until after his move to Barrett, and the information downloaded is available to the public. *Id.*; [R. 10 at 3.] Stockton again fails to discuss how the list constitutes confidential information under the contract. Thus, Stockton fails to prove a likelihood of success on the non-disclosure provision because it has not shown that Mr. Paeth violated the provision.

On the other side, Stockton's employee and borrower solicitation arguments fail to establish that it would suffer irreparable harm without an injunction. Stockton alleges that Mr. Paeth violated the agreement's employee solicitation provision by having "actively solicited Stockton Mortgage employees." [R. 1-1 at 75.] However, Stockton does not provide any evidence that Mr. Paeth continues to solicit Stockton employees. Indeed, it specifically alleges only that Mr. Paeth solicited his daughter to work for Barrett. This, it argues, establishes that "Stockton has already suffered irreparable injury" to merit a preliminary injunction. [R. 16 at 4.]

Similarly, Stockton argues that Mr. Paeth breached the borrower re-solicitation prohibition of his employment contract because he diverted customers to Barrett. *Id.* at 2. Stockton supports its contention with an email from Mr. Paeth to Mr. Bland while Mr. Paeth worked at Stockton. In the email, Mr. Paeth says that he can "definitely see being able to run [new files] through to you." [R. 16-2 at 2.] Yet Stockton fails to explain how the email establishes that Mr. Paeth solicited borrowers "for whom a loan previously was processed and

closed." [R. 1-1 at 46.] Even if the email establishes that Mr. Paeth at one time violated the provision prohibiting re-solicitation of borrowers, the email fails to show that Mr. Paeth continues to re-solicit borrowers now that he is no longer employed by Stockton.

Stockton's employee and borrower solicitation arguments misunderstand the forward-looking purpose of a preliminary injunction. A preliminary injunction protects the movant until a trial on the merits can be held. *See Robertson*, 831 F.3d at 761; *see also Nat'l Wildlife Fed'n v. Burford*, 835 F.2d 305, 325 (D.C. Cir. 1987) ("A preliminary injunction is designed to prevent irreparable injury; its value would be totally eviscerated if the plaintiff had to show that the harm had already occurred before the court could issue the injunction."). Thus, Stockton must demonstrate that it will suffer irreparable harm without an injunction even if it proves that it previously suffered irreparable harm. [1] By not providing evidence that Mr. Paeth is continuing or threatening to inflict future harm, Stockton has failed to show that any breach by Mr. Paeth would cause the irreparable harm required to warrant a preliminary injunction.

**B**

Stockton next contends that it is entitled to a preliminary injunction because Mr. Bland and Mr. Paeth violated the Kentucky Uniform Trade Secrets Act. [R. 1-1 at 68.] The KUTSA permits a party to enjoin the "[a]ctual or threatened misappropriation" of trade secrets. Ky. Rev. Stat. § 365.882(1). To succeed on a trade-secrets claim, Stockton must thus show that a client list or other specific information qualifies as a trade secret and another party misappropriated the

---

[1] Stockton also argues that the parties contracted to presume irreparable injury in case of breach. "Actual injury usually is not presumed, however; it must be proved." *Patio Enclosures, Inc. v. Herbst*, 39 F. App'x 964, 970 (6th Cir. 2002) (citation omitted); *see also Nexteer Automotive Corp.*, 2014 U.S. Dist. LEXIS 18250, 2014 WL 562264, at *9 (E.D. Mich. Feb. 13, 2014) ("[N]umerous courts have held that such a contractual provision does not alter the court's obligation to analyze whether the party seeking an injunction has proven irreparable harm.") (citing cases). Thus, even if breach of contract is established, the Court will not presume that irreparable injury would result.

11

trade secret. Stockton fails to raise a strong likelihood of success that any information taken by Mr. Bland or Mr. Paeth constitutes a trade secret.

A trade secret is information that "[d]erives independent economic value" from being "not generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its" use and "is the subject of efforts that are reasonable under the circumstances to maintain its secrecy." Ky. Rev. Stat. § 365.880(4). Whether information constitutes a trade secret is a question of fact. *See Brake Parts, Inc. v. Lewis*, 443 F. App'x 27, 29 (6th Cir. 2011).

When determining whether client information is readily ascertainable by proper means, courts distinguish the information based on the resources required to obtain the list. On the one hand, a list "discoverable only through extraordinary efforts and through many years' expenditure of time and money" or a list of "purchasers of unusual goods or services not generally known" may be trade secrets. *ATC Distrib. Grp., Inc. v. Whatever It Takes Transmissions & Parts, Inc.*, 402 F.3d 700, 714 (6th Cir. 2005) (internal quotations omitted) (cleaned up). This type of information may be a trade secret. *Id.* On the other hand, there are "lists of customers whose identities as purchasers of a given type of product may be obtained through such legitimate channels as telephone books, the internet, or by calling local businesses." *Id.* These do not constitute trade secrets. *Id.* Moreover, a customer list cannot support a trade-secrets claim when it "was not a list [the employer] kept itself" or was not compiled from any of the employer's resources. *McKesson Med. - Surgical, Inc. v. Micro Bio-Medics, Inc.*, 266 F. Supp. 2d 590, 594 (E.D. Mich. 2003) (using the uniform definition of trade secret).

Stockton has failed to rebut the Defendants' argument that any information taken by Mr. Bland or Mr. Paeth is readily ascertainable by proper means. The Defendants contend that any

information taken "is easily obtainable from state realtor licensing boards as public information." [R. 10 at 3.] Stockton responds only by pointing to the Defendants' affidavits stating that they downloaded their preexisting client lists. [*See* R. 10-1 at 3; R. 10-2 at 4.] Consequently, Stockton fails to establish that the information in the lists is not obtainable through "such legitimate channels" as the publicly available state licensing board. *See ATC Distribution Grp., Inc.*, 402 F.3d at 714. Moreover, because Stockton has not shown that Mr. Bland and Mr. Paeth made the lists while working at Stockton, the lists were not ones that Stockton kept itself nor were they compiled from any Stockton resources. *See McKesson Med. - Surgical, Inc.*, 266 F. Supp. 2d at 594. Because any information taken by Mr. Bland and Mr. Paeth was readily ascertainable by proper means, they may not form the basis for a successful trade-secrets claim. A preliminary injunction on this claim would thus be improper.

## C

Stockton asserts that four other claims justify a preliminary injunction: tortious interference with contractual relations, tortious interference with business expectancy, civil conspiracy, and breach of duty of loyalty. [R. 1-1 at 12-15.] Yet Stockton cites no legal authority to guide any of these claims. [R. 1-1 at 74-75; R. 16 at 7-8.] Because Stockton has failed to establish a strong likelihood of success for a claim that would cause Stockton irreparable injury absent relief, a preliminary injunction is improper.

To prove a tortious interference with contractual relations claim, a plaintiff must establish (1) the existence of a contract, (2) the defendant's knowledge of the contract, (3) the defendant's intent to cause a breach of that contract, (4) that the defendant's actions caused a breach of the contract, (5) that the plaintiff suffered harm as a result, and (6) that the defendant enjoyed no privilege or justification for its conduct. *See Seeger Enters. v. Town & Country Bank & Tr. Co.*,

13

518 S.W.3d 791, 795 (Ky. Ct. App. 2017) (citing *Snow Pallett, Inc. v. Monticello Banking Co.*, 367 S.W.3d 1, 6-7 (Ky. App. 2012)). As explained, Stockton has failed to show that Mr. Bland breached any contract provisions. Stockton also failed to show that Mr. Paeth breached his non-disclosure agreements or that he threatens to violate the employee or borrower solicitation provisions absent an injunction. Therefore, preliminary relief for Stockton's tortious interference with contractual relations claim is improper.

Similarly, a party must prove six elements to succeed on a claim for tortious interference with business expectancy: (1) there was a valid business relationship or expectancy; (2) a defendant's knowledge of this relationship or expectancy; (3) an intentional act of interference; (4) an improper motive; (5) causation; and (6) special damages. *See Louisville Outlet Shoppes, LLC v. Paragon Outlet Partners*, LLC, No. 2014-CA-001699-MR, 2016 Ky. App. Unpub. LEXIS 200, at *7 (Ky. Ct. App. Mar. 11, 2016). Stockton alleges that Mr. Bland and Mr. Paeth tortiously interfered with business expectancy by "divert[ing] prospective customers of Stockton Mortgage to Barrett Financial Group." [R. 1-1 at 14.] However, Stockton puts forth no evidence showing that Stockton lost any customers to Barrett. Stockton further fails to prove that it will suffer injury by losing any future customers to Barrett if the Defendants are not enjoined.

To prevail on a civil conspiracy claim, the proponent must show "an unlawful/corrupt combination or agreement between the alleged conspirators to do by some concerted action an unlawful act." *Peoples Bank of N. Ky., Inc. v. Crowe Chizek & Co. LLC*, 277 S.W.3d 255, 261 (Ky. Ct. App. 2008) (citing *Montgomery v. Milam*, 910 S.W.2d 237, 239 (Ky. 1995)). Stockton supports its claim with "all of the reasons set forth" relating to its breach of contract and tortious interference claims. [R. 16 at 7.] But this fails to establish that the Defendants committed an

14

unlawful act. *See Peoples Bank of N. Ky., Inc.*, 277 S.W.3d at 261. A preliminary injunction is therefore improper for Stockton's civil conspiracy claim.

Stockton also claims that the Court should enjoin Mr. Paeth because he violated a duty of loyalty to Stockton. [R. 16 at 7.] Stockton argues that Mr. Paeth violated a duty of loyalty by "soliciting a Stockton employee" and "coordinating with third-party vendors to transfer information." *Id.* Yet Stockton wholly fails to explain any obligations this duty imposed on Mr. Paeth. Moreover, Stockton fails to establish that any violation will cause it harm absent relief. Therefore, a preliminary injunction is improper for Stockton's complained breach of the duty of loyalty.

**D**

Separately, Stockton also requests a limited discovery period to obtain information that would further support its preliminary injunction motion. [R1-1 at 82-84.] Courts have the discretion to order expedited discovery where a party shows good cause for the departure from the normal process. *See Branch Banking & Tr. Co. v. Jones*, No. 5:18-cv-610-JMH, 2018 U.S. Dist. LEXIS 204659, at *19 (E.D. Ky. Dec. 4, 2018). When determining whether good cause exists to order expedited discovery, courts consider factors including the danger that the nonmovant will not preserve the information sought, whether expedited discovery will substantially contribute to moving the case forward, and the narrow scope of the information sought." *Id.* (citing *Jockey Club Info. Sys. v. Doe*, No. 5:15-204-KKC, 2015 U.S. Dist. LEXIS 96720, at *1 (E.D. Ky. July 24, 2015)).

Expedited discovery in this matter would be inappropriate. Stockton does not allege any danger that Defendants will not preserve the information sought. Further, Stockton's proposed requests for production and interrogatories include requests for communications between the

15

Defendants relating to their employment at Stockton, communications or documents relating to Mr. Bland or Mr. Paeth's business at Barrett since leaving Stockton, and names of individuals with relevant information. [R. 1-1 at 88-89.] These requests would likely not substantially contribute to determining the likelihood of success on Stockton's claims or identifying threatened harms. Moreover, the broad scope of the proposed requests supports the denial of Stockton's request. Therefore, good cause does not exist to justify expedited discovery.

### III

Accordingly, and the Court being sufficiently advised, it is hereby **ORDERED** as follows:

1. The Plaintiff's motion for preliminary injunction **[R. 1-1 at 66-76]** is **DENIED** and
2. The Plaintiff's Motion for Expedited Discovery **[R. 1-1 at 82-84]** is **DENIED**

This the 21st day of December, 2022.

Gregory F. Van Tatenhove
United States District Judge

16